| **Fill in this information to identify the case:** |
|---|

United States Bankruptcy Court for the:

**SOUTHERN DISTRICT OF NEW YORK**

Case number (if known): _____   Chapter ___**11**___

☐ Check if this is an amended filing

## Official Form 201

## Voluntary Petition for Non-Individuals Filing for Bankruptcy          04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, Instructions for Bankruptcy Forms for Non-Individuals, is available.

1. **Debtor's name**          **Bernsohn & Fetner LLC**

2. **All other names debtor used in the last 8 years**

   Include any assumed names, trade names and *doing business as* names

3. **Debtor's federal Employer Identification Number (EIN)**          4  3  –  2  0  2  9  5  0  4

4. **Debtor's address**

   **Principal place of business**

   **12 Van Houten Street**
   Number     Street

   **Upper Nyack          NY     10960**
   City                State   ZIP Code

   **Rockland**
   County

   **Mailing address, if different from principal place of business**

   Number     Street

   P.O. Box

   City                State   ZIP Code

   **Location of principal assets, if different from principal place of business**

   Number     Street

   City                State   ZIP Code

5. **Debtor's website (URL)**          **www.bfbuilding.com**

6. **Type of debtor**
   - ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
   - ☐ Partnership (excluding LLP)
   - ☐ Other. Specify: _____

Debtor  **Bernsohn & Fetner LLC** _____    Case number (if known) _____

**7.  Describe debtor's business**

A.  *Check one:*

☐  Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐  Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐  Railroad (as defined in 11 U.S.C. § 101(44))
☐  Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐  Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐  Clearing Bank (as defined in 11 U.S.C. § 781(3))
☑  None of the above

B.  *Check all that apply:*

☐  Tax-exempt entity (as described in 26 U.S.C. § 501)
☐  Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
☐  Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C.  NAICS (North American Industry Classification System) 4-digit code that best describes debtor.  See http://www.uscourts.gov/four-digit-national-association-naics-codes

__5__  __3__  __1__  __3__

**8.  Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐  Chapter 7
☐  Chapter 9
☑  Chapter 11.  *Check all that apply:*

    ☑  Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

    ☑  The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).  If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐  A plan is being filed with this petition.

    ☐  Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐  The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934.  File the Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy Under Chapter 11 (Official Form 201A) with this form.

    ☐  The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐  Chapter 12

**9.  Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑  No
☐  Yes. District _____  When _____  Case number _____
                                              MM / DD / YYYY
        District _____  When _____  Case number _____
                                              MM / DD / YYYY
        District _____  When _____  Case number _____
                                              MM / DD / YYYY

Debtor  **Bernsohn & Fetner LLC**                                    Case number (if known) _____

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☒ No

☐ Yes.   Debtor _____    Relationship _____

District _____    When _____
                                                                 MM / DD / YYYY

Case number, if known _____

Debtor _____    Relationship _____

District _____    When _____
                                                                 MM / DD / YYYY

Case number, if known _____

**11. Why is the case filed in *this district*?**

Check all that apply:

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?**    *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                                      Number      Street

_____

_____
City                                 State      ZIP Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency _____

Contact name _____

Phone _____

████  **Statistical and adminstrative information**

**13. Debtor's estimation of available funds**

Check one:

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

Debtor **Bernsohn & Fetner LLC** _____ Case number (if known) _____

| 14. | Estimated number of creditors | ☑ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
|---|---|---|---|---|
| | | ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| | | ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| | | ☐ 200-999 | | |

| 15. | Estimated assets | ☐ $0-$50,000 | ☑ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|---|
| | | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| 16. | Estimated liabilities | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|---|
| | | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | | ☑ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

17. **Declaration and signature of authorized representative of debtor**

■ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

■ I have been authorized to file this petition on behalf of the debtor.

■ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **11/07/2017**
MM / DD / YYYY

X **/s/ Steven Fetner** _____ **Steven Fetner** _____
Signature of authorized representative of debtor     Printed name

Title **Managing Member** _____

18. **Signature of attorney**

X **/s/ David H. Hartheimer, Esq** _____ Date **11/07/2017** _____
Signature of attorney for debtor     MM / DD / YYYY

**David H. Hartheimer, Esq** _____
Printed name

**Mayerson & Hartheimer PLLC** _____
Firm name

**845 Third Ave** _____
Number          Street

**11th Floor** _____

**New York** _____ **NY** _____ **10022** _____
City     State     ZIP Code

**(646) 778-4382** _____ **david@mhlaw-ny.com** _____
Contact phone     Email address

**2423432** _____ **NY** _____
Bar number     State

# BERNSOHN AND FETNER, LLC
## BALANCE SHEETS
### DECEMBER 31,

|  | 2016 | 2015 |
|---|---|---|
| **ASSETS** | | |
| **CURRENT ASSETS** | | |
| Cash | $ 432,131 | $ 2,487,159 |
| Accounts Receivable | 182,418 | 2,174,046 |
| Loans and Exchange | 733 | 1,483 |
| Total Current Assets | 615,282 | 4,662,688 |
| **SECURITY DEPOSITS** | - | 3,644 |
| **TOTAL ASSETS** | $ 615,282 | $ 4,666,332 |
| **LIABILITIES AND MEMBERS' (DEFICIT) EQUITY** | | |
| **CURRENT LIABILITIES** | | |
| Accounts Payable | $ 969,860 | $ 1,533,603 |
| Due to Affiliate | (3,871) | 129 |
| Sales Tax Payable | 7,405 | 24,824 |
| Customer Deposits | 560,516 | 3,705,888 |
| Loan Payable | - | 81,000 |
| Taxes Payable | (3,734) | 0 |
| Total Current Liabilities | 1,530,176 | 5,345,444 |
| **MEMBERS' (DEFICIT) EQUITY** | | |
| Members' (Deficit) Equity | (914,894) | (679,112) |
| **TOTAL LIABILITIES AND MEMBERS' (DEFICIT) EQUITY** | $ 615,282 | $ 4,666,332 |

# BERNSOHN AND FETNER, LLC
## STATEMENTS OF INCOME AND PARTNERS' CAPITAL
## FOR THE YEARS ENDED DECEMBER 31,

|  | 2016 | 2015 |
|---|---|---|
| CONTRACT REVENUE | $ 8,888,597 | $ 24,505,387 |
| CONTRACT COSTS | 6,144,815 | 20,630,046 |
| GROSS PROFIT | 2,743,782 | 3,875,341 |
| EXPENSES: |  |  |
| Officers' Salary | 435,926 | 832,346 |
| Office Salary | 498,647 | 587,570 |
| General and Administrative Expenses | 1,803,939 | 2,184,331 |
| Total Expenses | 2,738,512 | 3,604,247 |
| NET INCOME BEFORE OTHER INCOME AND PROVISION FOR INCOME TAXES | 5,270 | 271,094 |
| OTHER INCOME |  |  |
| Interest and Dividend Income | 5,689 | 4,507 |
| NET INCOME BEFORE PROVISION FOR INCOME TAXES | 10,959 | 275,601 |
| PROVISION FOR INCOME TAXES | 24,716 | 50,739 |
| NET INCOME | (13,757) | 224,862 |
| MEMBERS' EQUITY (DEFICIT) - Beginning of Year | (679,112) | 12,322 |
| DISTRIBUTIONS | (83,137) | (10,000) |
| REDEMPTION OF MEMBER'S INTEREST | (138,888) | (906,296) |
| MEMBERS' (DEFICIT) EQUITY - End of Year | $ (914,894) | $ (679,112) |

# BERNSOHN AND FETNER, LLC
## SUPPORTING SCHEDULE I
### FOR THE YEARS ENDED DECEMBER 31,

|  | 2016 | 2015 |
|---|---|---|
| **GENERAL AND ADMINISTRATIVE EXPENSES** | | |
| Insurance | $ 735,470 | $ 744,009 |
| Payroll Tax Expense | 159,712 | 261,935 |
| Automobile and Travel | 163,221 | 296,901 |
| Office Expenses | 84,212 | 147,159 |
| Rent | 127,122 | 118,705 |
| Entertainment | 76,786 | 97,973 |
| Computer Expenses | 35,778 | 51,577 |
| Professional Fees | 128,266 | 147,961 |
| Telephone | 29,700 | 44,235 |
| Employee Welfare | 41,689 | 49,742 |
| Equipment Rental | 46,227 | 38,310 |
| Commissions | 28,830 | 33,578 |
| Storage | 25,886 | 24,927 |
| Blue Prints | - | - |
| Christmas Picnic | 9,790 | 28,672 |
| Advertising | 19,133 | 12,034 |
| Utilities | 14,803 | 17,368 |
| Postage and Delivery | 7,094 | 16,284 |
| Gifts | 4,236 | 24,823 |
| Dues and Subscriptions | 6,898 | 4,581 |
| Licenses and Permits | 20,204 | 4,851 |
| Contributions | 9,608 | 2,750 |
| Bank Charges | 1,254 | 1,717 |
| Education | 394 | 9,620 |
| Temporary Help | 26,237 | 4,219 |
| Pension Plan Administration | - | 400 |
| Investment Fees | 1,389 | - |
|  | $ 1,803,939 | $ 2,184,331 |

Form **8879-PE**

# IRS e-file Signature Authorization
# for Form 1065

OMB No. 1545-0123

▶ Don't send to the IRS. Keep for your records.

Department of the Treasury
Internal Revenue Service

▶ **Information about Form 8879-PE and its instructions is at** *www.irs.gov/form8879pe.*

For calendar year 2016, or tax year beginning                    , 2016, ending              ,20

**2016**

| Name of partnership | Employer identification number |
|---|---|
| BERNSOHN AND FETNER LLC | 43-2029504 |

## Part I    Tax Return Information (Whole dollars only)

| | | |
|---|---|---:|
| 1 Gross receipts or sales less returns and allowances (Form 1065, line 1c) | 1 | 9,129,616. |
| 2 Gross profit (Form 1065, line 3) | 2 | 2,984,801. |
| 3 Ordinary business income (loss) (Form 1065, line 22) | 3 | 59,056. |
| 4 Net rental real estate income (loss) (Form 1065, Schedule K, line 2) | 4 | |
| 5 Other net rental income (loss) (Form 1065, Schedule K, line 3c) | 5 | |

## Part II    Declaration and Signature Authorization of General Partner or Limited Liability Company Member Manager (Be sure to get a copy of the partnership's return)

Under penalties of perjury, I declare that I am a general partner or limited liability company member manager of the above partnership and that I have examined a copy of the partnership's 2016 electronic return of partnership income and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the partnership's electronic return of partnership income. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the partnership's return to the IRS and to receive from the IRS **(a)** an acknowledgement of receipt or reason for rejection of the transmission and **(b)** the reason for any delay in processing the return. I have selected a personal identification number (PIN) as my signature for the partnership's electronic return of partnership income.

**General Partner or Limited Liability Company Member Manager's PIN: check one box only**

[X] I authorize **GROSSBACH ZAINO & ASSOCIATES, CPA'S, P** to enter my PIN [■■■■■]
ERO firm name                                                        **don't enter all zeros**

as my signature on the partnership's 2016 electronically filed return of partnership income.

[ ] As a general partner or limited liability company member manager of the partnership, I will enter my PIN as my signature on the partnership's 2016 electronically filed return of partnership income.

General partner or limited liability company member manager's signature ▶ _____

Title ▶ **PRESIDENT**                                                        Date ▶ _____

## Part III    Certification and Authentication

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN. [■■■■■■■■■■■]
**don't enter all zeros**

I certify that the above numeric entry is my PIN, which is my signature on the 2016 electronically filed return of partnership income for the partnership indicated above. I confirm that I am submitting this return in accordance with the requirements of **Pub. 3112**, IRS *e-file* Application and Participation, and **Pub. 4163**, Modernized e-File (MeF) Information for Authorized IRS *e-file* Providers for Business Returns.

ERO's signature ▶ _____                    Date ▶ **03/28/17**

### ERO Must Retain This Form - See Instructions
### Don't Submit This Form to the IRS Unless Requested To Do So

**For Paperwork Reduction Act Notice, see instructions.**                    Form **8879-PE** (2016)

LHA

621031  12-06-16

10550328 135009 4550                    2016.03020 BERNSOHN AND FETNER LLC                    4550___1

# U.S. Return of Partnership Income

**Form 1065**

Department of the Treasury
Internal Revenue Service

OMB No. 1545-0123

For calendar year 2016, or tax year beginning _____ , ending _____ . _____

**EXTENSION GRANTED TO 09/15/17**

**2016**

| | | |
|---|---|---|
| **A** Principal business activity<br>CONSTUCTION MANAGEMENT | Name of partnership<br>**BERNSOHN AND FETNER LLC** | **D** Employer identification number<br>**43-2029504** |
| **B** Principal product or service<br>GENERAL CONTRACTOR | Number, street, and room or suite no. If a P.O. box, see the instructions.<br>**625 WEST 51ST STREET** | **E** Date business started<br>**09/29/2003** |
| **C** Business code number<br>236110 | City or town, state or province, country, and ZIP or foreign postal code<br>**NEW YORK**                    **NY 10019** | **F** Total assets<br>$ **622,887.** |

Type or Print

**G** Check applicable boxes: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return
**(6)** ☐ Technical termination - also check (1) or (2)

**H** Check accounting method: **(1)** ☐ Cash **(2)** ☒ Accrual **(3)** ☐ Other (specify) ▶

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 3

**J** Check if Schedules C and M-3 are attached ☐

**Caution.** Include **only** trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

### Income

| | | | |
|---|---|---|---|
| **1 a** Gross receipts or sales | 1a | 9,129,616. | |
| **b** Returns and allowances | 1b | | |
| **c** Balance. Subtract line 1b from line 1a | | 1c | 9,129,616. |
| **2** Cost of goods sold (attach Form 1125-A) | | 2 | 6,144,815. |
| **3** Gross profit. Subtract line 2 from line 1c | | 3 | 2,984,801. |
| **4** Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | | 4 | |
| **5** Net farm profit (loss) (attach Schedule F (Form 1040)) | | 5 | |
| **6** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 6 | |
| **7** Other income (loss) (attach statement) **SEE STATEMENT 1** | | 7 | 16. |
| **8** Total income (loss). Combine lines 3 through 7 | | 8 | 2,984,817. |

### Deductions (see the instructions for limitations)

| | | | |
|---|---|---|---|
| **9** Salaries and wages (other than to partners) (less employment credits) | | 9 | 498,647. |
| **10** Guaranteed payments to partners | | 10 | |
| **11** Repairs and maintenance | | 11 | |
| **12** Bad debts | | 12 | 241,035. |
| **13** Rent | | 13 | 127,122. |
| **14** Taxes and licenses **SEE STATEMENT 2** | | 14 | 184,428. |
| **15** Interest | | 15 | 1,389. |
| **16 a** Depreciation (if required, attach Form 4562) | 16a | | |
| **b** Less depreciation reported on Form 1125-A and elsewhere on return | 16b | | 16c |
| **17** Depletion **(Do not deduct oil and gas depletion.)** | | 17 | |
| **18** Retirement plans, etc. | | 18 | |
| **19** Employee benefit programs | | 19 | 41,689. |
| **20** Other deductions (attach statement) **SEE STATEMENT 3** | | 20 | 1,831,451. |
| **21** Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | | 21 | 2,925,761. |
| **22** Ordinary business income (loss). Subtract line 21 from line 8 | | 22 | 59,056. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

Signature of general partner or limited liability company member manager                    Date

May the IRS discuss this return with the preparer shown below (see instr.)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| LEONARD FRUCHTER | LEONARD FRUCHTER | 03/28/17 | | |

Firm's name ▶ GROSSBACH ZAINO & ASSOCIATES, CPA'S, PC.

Firm's address ▶ 156 WEST 56TH STREET   STE 1804
NEW YORK, NY 10019

Firm's EIN ▶ 13-4200651

Phone no. (212) 957-3600

LHA   For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2016)

611001 01-05-17

Form 1065 (2016)    BERNSOHN AND FETNER LLC    43-2029504    Page **2**

## Schedule B | Other Information

|  |  | Yes | No |
|---|---|---|---|
| **1** | What type of entity is filing this return? Check the applicable box: | | |
| | **a** ☐ Domestic general partnership    **b** ☐ Domestic limited partnership | | |
| | **c** ☒ Domestic limited liability company    **d** ☐ Domestic limited liability partnership | | |
| | **e** ☐ Foreign partnership    **f** ☐ Other ▶ | | |
| **2** | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? | | X |
| **3** | At the end of the tax year: | | |
| **a** | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| **b** | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | X | |
| **4** | At the end of the tax year, did the partnership: | | |
| **a** | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | | | | Yes | No |
|---|---|---|---|---|---|
| **b** | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

|  |  | Yes | No |
|---|---|---|---|
| **5** | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| **6** | Does the partnership satisfy **all four** of the following conditions? | | |
| **a** | The partnership's total receipts for the tax year were less than $250,000. | | |
| **b** | The partnership's total assets at the end of the tax year were less than $ 1 million. | | |
| **c** | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| **d** | The partnership is not filing and is not required to file Schedule M-3 | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| **7** | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| **8** | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| **9** | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| **10** | At any time during calendar year 2016, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). If "Yes," enter the name of the foreign country. | | |
| | ▶ | | X |

Form **1065** (2016)

611011 01-05-17

10550328 135009 4550          2016.03020 BERNSOHN AND FETNER LLC          4550___1

Form 1065 (2016)    BERNSOHN AND FETNER LLC                                    43-2029504    Page **3**

## Schedule B | Other Information *(continued)*

| | | Yes | No |
|---|---|---|---|
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? | | X |
| | See instructions for details regarding a section 754 election. | | |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly owned by the partnership throughout the tax year) ▶ ☐ | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ | | |
| 16 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |
| 18a | Did you make any payments in 2016 that would require you to file Form(s) 1099? See instructions | X | |
| b | If "Yes," did you or will you file required Form(s) 1099? | X | |
| 19 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶ | | |
| 20 | Enter the number of partners that are foreign governments under section 892. ▶ | | |
| 21 | During the partnership's tax year, did the partnership make any payments that would require it to file Form 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474)? | | X |
| 22 | Was the partnership a specified domestic entity required to file Form 8938 for the tax year (See the Instructions for Form 8938)? | | X |

**Designation of Tax Matters Partner** *(see instructions)*

Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

| | | | |
|---|---|---|---|
| Name of designated TMP ▶ | **STEVEN FETNER** | Identifying number of TMP ▶ | ▋▋▋▋▋ |
| If the TMP is an entity, name of TMP representative ▶ | | Phone number of TMP ▶ | |
| Address of designated TMP ▶ | 12 VAN HOUTEN STREET <br> UPPER NYACK, NY  10960-1529 | | |

Form **1065** (2016)

611021 01-05-17

10550328 135009 4550                    2016.03020 BERNSOHN AND FETNER LLC        4550___1

Form 1065 (2016)    BERNSOHN AND FETNER LLC                    43-2029504    Page **4**

| Schedule K | Partners' Distributive Share Items | | | Total amount |
|---|---|---|---|---|
| **1** | Ordinary business income (loss) (page 1, line 22) | | **1** | 59,056. |
| **2** | Net rental real estate income (loss) (attach Form 8825) | | **2** | |
| **3 a** | Other gross rental income (loss) | 3a | | |
| **b** | Expenses from other rental activities (attach statement) | 3b | | |
| **c** | Other net rental income (loss). Subtract line 3b from line 3a | | **3c** | |
| **4** | Guaranteed payments | | **4** | |
| **5** | Interest income                            SEE STATEMENT 4 | | **5** | 5,689. |
| **6** | Dividends: **a** Ordinary dividends | | **6a** | |
| | **b** Qualified dividends | 6b | | |
| **7** | Royalties | | **7** | |
| **8** | Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | | **8** | |
| **9 a** | Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | | **9a** | |
| **b** | Collectibles (28%) gain (loss) | 9b | | |
| **c** | Unrecaptured section 1250 gain (attach statement) | 9c | | |
| **10** | Net section 1231 gain (loss) (attach Form 4797) | | **10** | |
| **11** | Other income (loss) (see instructions) Type ▶ | | **11** | |
| **12** | Section 179 deduction (attach Form 4562) | | **12** | |
| **13 a** | Contributions                            SEE STATEMENT 5 | | **13a** | 9,608. |
| **b** | Investment interest expense | | **13b** | |
| **c** | Section 59(e)(2) expenditures: **(1)** Type ▶                    **(2)** Amount ▶ | | **13c(2)** | |
| **d** | Other deductions (see instructions) Type ▶ | | **13d** | |
| **14 a** | Net earnings (loss) from self-employment | | **14a** | 59,056. |
| **b** | Gross farming or fishing income | | **14b** | |
| **c** | Gross nonfarm income | | **14c** | 2,984,817. |
| **15 a** | Low-income housing credit (section 42(j)(5)) | | **15a** | |
| **b** | Low-income housing credit (other) | | **15b** | |
| **c** | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | | **15c** | |
| **d** | Other rental real estate credits (see instructions)        Type ▶ | | **15d** | |
| **e** | Other rental credits (see instructions)        Type ▶ | | **15e** | |
| **f** | Other credits (see instructions)        Type ▶ | | **15f** | |
| **16 a** | Name of country or U.S. possession ▶ | | | |
| **b** | Gross income from all sources | | **16b** | |
| **c** | Gross income sourced at partner level | | **16c** | |
| | Foreign gross income sourced at partnership level | | | |
| **d** | Passive category ▶        **e** General category ▶        **f** Other ▶ | | **16f** | |
| | Deductions allocated and apportioned at partner level | | | |
| **g** | Interest expense ▶        **h** Other ▶ | | **16h** | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | | |
| **i** | Passive category ▶        **j** General category ▶        **k** Other ▶ | | **16k** | |
| **l** | Total foreign taxes (check one): ▶ Paid ☐    Accrued ☐ | | **16l** | |
| **m** | Reduction in taxes available for credit (attach statement) | | **16m** | |
| **n** | Other foreign tax information (attach statement) | | | |
| **17 a** | Post-1986 depreciation adjustment | | **17a** | -973. |
| **b** | Adjusted gain or loss | | **17b** | |
| **c** | Depletion (other than oil and gas) | | **17c** | |
| **d** | Oil, gas, and geothermal properties - gross income | | **17d** | |
| **e** | Oil, gas, and geothermal properties - deductions | | **17e** | |
| **f** | Other AMT items (attach statement) | | **17f** | |
| **18 a** | Tax-exempt interest income | | **18a** | |
| **b** | Other tax-exempt income | | **18b** | |
| **c** | Nondeductible expenses                            SEE STATEMENT 6 | | **18c** | 68,894. |
| **19 a** | Distributions of cash and marketable securities | | **19a** | 222,025. |
| **b** | Distributions of other property | | **19b** | |
| **20 a** | Investment income | | **20a** | 5,689. |
| **b** | Investment expenses | | **20b** | |
| **c** | Other items and amounts (attach statement) | | | |

*Income (Loss)* | *Deductions* | *Self-Employment* | *Credits* | *Foreign Transactions* | *Alternative Minimum Tax (AMT) Items* | *Other Information*

Form **1065** (2016)

Form 1065 (2016)　　BERNSOHN AND FETNER LLC　　43-2029504　　Page **5**

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | | | | **1** | 55,137. |

| 2 | Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| a | General partners | | | | | | |
| b | Limited partners | | 55,137. | | | | |

## Schedule L　Balance Sheets per Books

| | Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|---|
| 1 | Cash | | 2,487,159. | | 432,131. |
| 2a | Trade notes and accounts receivable | 2,174,046. | | 182,418. | |
| b | Less allowance for bad debts | | 2,174,046. | | 182,418. |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets (attach statement) | STATEMENT 7 | 48,733. | | 8,338. |
| 7a | Loans to partners (or persons related to partners) | | | | |
| b | Mortgage and real estate loans | | | | |
| 8 | Other investments (attach statement) | | | | |
| 9a | Buildings and other depreciable assets | 116,642. | | 116,642. | |
| b | Less accumulated depreciation | 116,642. | | 116,642. | |
| 10a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 11 | Land (net of any amortization) | | | | |
| 12a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | | | | |
| 13 | Other assets (attach statement) | STATEMENT 8 | 3,644. | | |
| 14 | Total assets | | 4,713,582. | | 622,887. |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable | | 1,533,603. | | 969,860. |
| 16 | Mortgages, notes, bonds payable in less than 1 year | | 81,000. | | |
| 17 | Other current liabilities (attach statement) | STATEMENT 9 | 3,778,091. | | 567,921. |
| 18 | All nonrecourse loans | | | | |
| 19a | Loans from partners (or persons related to partners) | | | | |
| b | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 | Other liabilities (attach statement) | | | | |
| 21 | Partners' capital accounts | | -679,112. | | -914,894. |
| 22 | Total liabilities and capital | | 4,713,582. | | 622,887. |

## Schedule M-1　Reconciliation of Income (Loss) per Books With Income (Loss) per Return

**Note.** The partnership may be required to file Schedule M-3 (see instructions).

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | -13,757. | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a | Tax-exempt interest $ | |
| 3 | Guaranteed payments (other than health insurance) | | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d and 16l (itemize): STMT 11 | 30,501. | a | Depreciation $ | |
| a | Depreciation $ | | 8 | Add lines 6 and 7 | |
| b | Travel and entertainment $ 38,393. | 68,894. | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | 55,137. |
| 5 | Add lines 1 through 4 | 55,137. | | | |

## Schedule M-2　Analysis of Partners' Capital Accounts

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | -679,112. | 6 | Distributions: a Cash | 222,025. |
| 2 | Capital contributed: a Cash | | | b Property | |
| | b Property | | 7 | Other decreases (itemize): | |
| 3 | Net income (loss) per books | -13,757. | | | |
| 4 | Other increases (itemize): | | 8 | Add lines 6 and 7 | 222,025. |
| 5 | Add lines 1 through 4 | -692,869. | 9 | Balance at end of year. Subtract line 8 from line 5 | -914,894. |

611042 01-05-17

Form **1065** (2016)

10550328 135009 4550　　　2016.03020 BERNSOHN AND FETNER LLC　　4550___1

Form **1125-A**

(Rev. October 2016)

Department of the Treasury
Internal Revenue Service

# Cost of Goods Sold

▶ **Attach to Form 1120, 1120-C, 1120-F, 1120S, 1065, or 1065-B.**

▶ **Information about Form 1125-A and its instructions is at www.irs.gov/form1125a.**

OMB No. 1545-0123

| Name | Employer Identification number |
|---|---|
| BERNSOHN AND FETNER LLC | 43-2029504 |

| | | |
|---|---|---|
| 1 | Inventory at beginning of year | **1** | |
| 2 | Purchases | **2** | 4,979,496. |
| 3 | Cost of labor | **3** | 1,164,771. |
| 4 | Additional section 263A costs (attach schedule) | **4** | |
| 5 | Other costs (attach schedule)          SEE STATEMENT 12 | **5** | 548. |
| 6 | **Total.** Add lines 1 through 5 | **6** | 6,144,815. |
| 7 | Inventory at end of year | **7** | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return. See instructions | **8** | 6,144,815. |

**9a** Check all methods used for valuing closing inventory:

(i) ☐ Cost

(ii) ☐ Lower of cost or market

(iii) ☐ Other (Specify method used and attach explanation) ▶ _____

**b** Check if there was a writedown of subnormal goods ............................................. ▶ ☐

**c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ............. ▶ ☐

**d** If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO | **9d** | |

**e** If property is produced or acquired for resale, do the rules of Section 263A apply to the entity? See instructions ............ ☐ Yes ☒ No

**f** Was there any change in determining quantities, cost, or valuations between opening and closing inventory? ............ ☐ Yes ☒ No
If "Yes," attach explanation.

For Paperwork Reduction Act Notice, see separate instructions.

Form **1125-A** (Rev. 10-2016)

624441
11-21-16     JWA

**SCHEDULE B-1**
**(Form 1065)**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

# Information on Partners Owning 50% or More of the Partnership

► **Attach to Form 1065. See instructions.**

OMB No. 1545-0099

| Name of partnership | Employer identification number |
|---|---|
| BERNSOHN AND FETNER LLC | 43-2029504 |

**Part I**  **Entities Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**Part II**  **Individuals or Estates Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| RANDALL BERNSOHN | ███████ | UNITED STATES | 50.00 |
| STEVEN FETNER | ███████ | UNITED STATES | 99.00 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 1065.**          **Schedule B-1 (Form 1065) (Rev. 12-2011)**

624551
04-01-16

10550328 135009 4550          2016.03020 BERNSOHN AND FETNER LLC          4550___1

Form **4562**

Department of the Treasury
Internal Revenue Service    (99)

## Depreciation and Amortization
**(Including Information on Listed Property)**   OTHER   1

▶ Attach to your tax return.

▶ Information about Form 4562 and its separate instructions is at *www.irs.gov/form4562*.

OMB No. 1545-0172

**2016**

Attachment
Sequence No. **179**

| Name(s) shown on return | Business or activity to which this form relates | Identifying number |
|---|---|---|
| BERNSOHN AND FETNER LLC | GENERAL CONTRACTOR | 43-2029504 |

**Part I** Election To Expense Certain Property Under Section 179 **Note:** If you have any listed property, complete Part V before you complete Part I.

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | **1** | |
| 2 | Total cost of section 179 property placed in service (see instructions) | **2** | |
| 3 | Threshold cost of section 179 property before reduction in limitation | **3** | |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | **7** | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | **8** | |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8 | **9** | |
| 10 | Carryover of disallowed deduction from line 13 of your 2015 Form 4562 | **10** | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 | **11** | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | **12** | |
| 13 | Carryover of disallowed deduction to 2017. Add lines 9 and 10, less line 12 ▶ | **13** | |

**Note:** Don't use Part II or Part III below for listed property. Instead, use Part V.

**Part II** Special Depreciation Allowance and Other Depreciation **(Don't** include listed property.**)**

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year | **14** | |
| 15 | Property subject to section 168(f)(1) election | **15** | |
| 16 | Other depreciation (including ACRS) | **16** | |

**Part III** MACRS Depreciation **(Don't** include listed property.**)** (See instructions.)

**Section A**

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2016 | **17** | |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ▶ ☐ | | |

**Section B - Assets Placed in Service During 2016 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| **19a** 3-year property | | | | | | |
| **b** 5-year property | | | | | | |
| **c** 7-year property | | | | | | |
| **d** 10-year property | | | | | | |
| **e** 15-year property | | | | | | |
| **f** 20-year property | | | | | | |
| **g** 25-year property | | | 25 yrs. | | S/L | |
| **h** Residential rental property | / | | 27.5 yrs. | MM | S/L | |
| | / | | 27.5 yrs. | MM | S/L | |
| **i** Nonresidential real property | / | | 39 yrs. | MM | S/L | |
| | / | | | MM | S/L | |

**Section C - Assets Placed in Service During 2016 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| **20a** Class life | | | | | S/L | |
| **b** 12-year | | | 12 yrs. | | S/L | |
| **c** 40-year | / | | 40 yrs. | MM | S/L | |

**Part IV** Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | **21** | |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr. | **22** | |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | **23** | |

616251  12-21-16    LHA  **For Paperwork Reduction Act Notice, see separate instructions.**    Form **4562** (2016)

10550328 135009 4550          2016.03020 BERNSOHN AND FETNER LLC          4550___1

Form 4562 (2016)     BERNSOHN AND FETNER LLC                                    43-2029504    Page **2**

| **Part V** | **Listed Property** (Include automobiles, certain other vehicles, certain aircraft, certain computers, and property used for entertainment, recreation, or amusement.) |
|---|---|

**Note:** For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A - Depreciation and Other Information (Caution:** See the instructions for limits for passenger automobiles.)

24a Do you have evidence to support the business/investment use claimed?  ☐ Yes  ☐ No   24b If "Yes," is the evidence written?  ☐ Yes  ☐ No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use | | | | | | 25 | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 | | | | | 28 | | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 | | | | | | | 29 | |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle | | (b) Vehicle | | (c) Vehicle | | (d) Vehicle | | (e) Vehicle | | (f) Vehicle | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**don't** include commuting miles) | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **aren't** more than 5% owners or related persons.

| | | Yes | No |
|---|---|---|---|
| 37 | Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | |
| 38 | Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners | | |
| 39 | Do you treat all use of vehicles by employees as personal use? | | |
| 40 | Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? | | |
| 41 | Do you meet the requirements concerning qualified automobile demonstration use? | | |

**Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," don't complete Section B for the covered vehicles.

| **Part VI** | **Amortization** |
|---|---|

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2016 tax year: | | | | | |
| | : : | | | | |
| | : : | | | | |
| 43 Amortization of costs that began before your 2016 tax year | | | | 43 | |
| 44 **Total.** Add amounts in column (f). See the instructions for where to report | | | | 44 | |

616252  12-21-16

9

Form **4562** (2016)

BERNSOHN AND FETNER LLC                                                43-2029504

---

FORM 1065                        OTHER INCOME                    STATEMENT    1

---

| DESCRIPTION | AMOUNT |
|---|---:|
| MISCELLANEOUS | 16. |
| TOTAL TO FORM 1065, LINE 7 | 16. |

---

FORM 1065                        TAX EXPENSE                     STATEMENT    2

---

| DESCRIPTION | AMOUNT |
|---|---:|
| NEW YORK TAXES - BASED ON INCOME | 4,500. |
| NEW YORK CITY TAXES - BASED ON INCOME | 20,216. |
| MCTMT | 5,896. |
| PAYROLL TAXES | 153,816. |
| TOTAL TO FORM 1065, LINE 14 | 184,428. |

---

FORM 1065                      OTHER DEDUCTIONS                  STATEMENT    3

---

| DESCRIPTION | AMOUNT |
|---|---:|
| ADVERTISING | 19,133. |
| AGENCY FEES | 28,830. |
| AUTO & TRAVEL | 163,221. |
| BANK CHARGES | 1,254. |
| COMPANY EVENTS | 9,790. |
| COMPUTER SOFTWARE SUPPORT | 35,778. |
| CONSULTANTS | 2,450. |
| DUES & SUBSCRIPTIONS | 6,898. |
| EDUCATIONAL EXPENSES | 394. |
| EQUIPMENT RENTAL | 46,227. |
| GIFTS | 4,236. |
| INSURANCE | 704,969. |
| MEALS AND ENTERTAINMENT | 38,393. |
| OFFICE EXPENSES | 84,212. |
| OFFICER'S SALARY | 435,926. |
| PAYROLL SERVICE | 8,841. |
| PERMITS & LICENSES | 20,204. |
| POSTAGE AND DELIVERY | 7,094. |
| PROFESSIONAL FEES | 116,975. |
| STORAGE | 25,886. |
| TELEPHONE | 29,700. |
| TEMPORARY HELP | 26,237. |
| UTILITIES | 14,803. |
| TOTAL TO FORM 1065, LINE 20 | 1,831,451. |

BERNSOHN AND FETNER LLC                                                    43-2029504

| SCHEDULE K | INTEREST INCOME | STATEMENT 4 |

| DESCRIPTION | U.S. BONDS | OTHER |
|---|---|---|
| VARIOUS | | 5,689. |
| TOTAL TO SCHEDULE K, LINE 5 | | 5,689. |

| SCHEDULE K | CHARITABLE CONTRIBUTIONS | STATEMENT 5 |

| DESCRIPTION | TYPE | AMOUNT |
|---|---|---|
| VARIOUS | CASH (50%) | 9,608. |
| TOTALS TO SCHEDULE K, LINE 13A | | 9,608. |

| SCHEDULE K | NONDEDUCTIBLE EXPENSE | STATEMENT 6 |

| DESCRIPTION | AMOUNT |
|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 38,393. |
| OFFICER'S LIFE INSURANCE | 30,501. |
| TOTAL TO SCHEDULE K, LINE 18C | 68,894. |

| SCHEDULE L | OTHER CURRENT ASSETS | STATEMENT 7 |

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| LOANS & EXCHANGES | 1,483. | 733. |
| DUE TO AFFILIATE | | 3,871. |
| CITY PREPAID TAXES | 47,250. | 3,734. |
| TOTAL TO SCHEDULE L, LINE 6 | 48,733. | 8,338. |

BERNSOHN AND FETNER LLC                                                          43-2029504

---

| SCHEDULE L | OTHER ASSETS | STATEMENT | 8 |

---

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| SECURITY DEPOSITS | 3,644. | |
| TOTAL TO SCHEDULE L, LINE 13 | 3,644. | |

---

| SCHEDULE L | OTHER CURRENT LIABILITIES | STATEMENT | 9 |

---

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| DUE TO AFFILIATE | 129. | 0. |
| SALES TAX PAYABLE | 24,824. | 7,405. |
| CUSTOMER DEPOSITS | 3,705,888. | 560,516. |
| STATE ACCRUED TAX | 47,250. | |
| TOTAL TO SCHEDULE L, LINE 17 | 3,778,091. | 567,921. |

---

| FORM 1065 | PARTNERS' CAPITAL ACCOUNT SUMMARY | STATEMENT | 10 |

| PARTNER NUMBER | BEGINNING CAPITAL | CAPITAL CONTRIBUTED | SCHEDULE M-2 LNS 3, 4 & 7 | WITH-DRAWALS | ENDING CAPITAL |
|---|---|---|---|---|---|
| 1 | -833,832. | | 0. | 211,352. | -1,045,184. |
| 2 | 153,797. | | -13,925. | 10,673. | 129,199. |
| 3 | 923. | | 168. | | 1,091. |
| TOTAL | -679,112. | | -13,757. | 222,025. | -914,894. |

BERNSOHN AND FETNER LLC                                                    43-2029504

SCHEDULE M-1   EXPENSES RECORDED ON BOOKS NOT DEDUCTED IN RETURN   STATEMENT   11

| DESCRIPTION | AMOUNT |
|---|---|
| OFFICER'S LIFE INSURANCE | 30,501. |
| TOTAL TO SCHEDULE M-1, LINE 4 | 30,501. |

FORM 1125-A                          OTHER COSTS                       STATEMENT   12

| DESCRIPTION | AMOUNT |
|---|---|
| PERMITS AND FILING FEES | 548. |
| TOTAL TO LINE 5 | 548. |

651113

Schedule K-1
(Form 1065)

**2016**

Department of the Treasury
Internal Revenue Service

For calendar year 2016, or tax
year beginning _____
ending _____

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

**Partner's Share of Income, Deductions,
Credits, etc.**

▶ **See separate instructions.**

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 Ordinary business income (loss) | 0. | 15 Credits | |
| 2 Net rental real estate income (loss) | | | |
| 3 Other net rental income (loss) | | 16 Foreign transactions | |
| 4 Guaranteed payments | | | |
| 5 Interest income | | | |
| 6a Ordinary dividends | | | |
| 6b Qualified dividends | | 17 Alternative min tax (AMT) items | |
| 7 Royalties | | | |
| 8 Net short-term capital gain (loss) | | 18 Tax-exempt income and nondeductible expenses | |
| 9a Net long-term capital gain (loss) | | | |
| 9b Collectibles (28%) gain (loss) | | 19 Distributions | |
| 9c Unrecaptured sec 1250 gain | | A | 211,352. |
| 10 Net section 1231 gain (loss) | | 20 Other information | |
| 11 Other income (loss) | | | |
| 12 Section 179 deduction | | | |
| 13 Other deductions | | | |
| 14 Self-employment earnings (loss) | | | |
| | A | 0. | |

### Part I    Information About the Partnership

**A** Partnership's employer identification number
43-2029504

**B** Partnership's name, address, city, state, and ZIP code

BERNSOHN AND FETNER LLC
625 WEST 51ST STREET
NEW YORK, NY  10019

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II    Information About the Partner

**E** Partner's identifying number
▓▓▓▓▓▓▓▓▓▓

**F** Partner's name, address, city, state, and ZIP code

RANDALL BERNSOHN
434 GREENWICH STREET APT. 2B
NEW YORK, NY  10013

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?  INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 0.0000000% | 0.0000000% |
| Loss | 0.0000000% | 0.0000000% |
| Capital | 50.0000000% | 50.0000000% |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 0. |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | -833,832. |
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | 0. |
| Withdrawals & distributions | $( | 211,352.) |
| Ending capital account | $ | -1,045,184. |

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book

☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

*\*See attached statement for additional information.*

For IRS Use Only

651113

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2016**

For calendar year 2016, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,
Credits, etc.**    ▶ **See separate instructions.**

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

## Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | |
|---|---|---|
| **1** Ordinary business income (loss) 58,465. | **15** Credits | |
| **2** Net rental real estate income (loss) | **16** Foreign transactions | |
| **3** Other net rental income (loss) | | |
| **4** Guaranteed payments | | |
| **5** Interest income 5,632. | | |
| **6a** Ordinary dividends | **17** Alternative min tax (AMT) items | |
| **6b** Qualified dividends | A -963. | |
| **7** Royalties | **18** Tax-exempt income and nondeductible expenses | |
| **8** Net short-term capital gain (loss) | C* STMT | |
| **9a** Net long-term capital gain (loss) | | |
| **9b** Collectibles (28%) gain (loss) | **19** Distributions | |
| **9c** Unrecaptured sec 1250 gain | A 10,673. | |
| **10** Net section 1231 gain (loss) | **20** Other information | |
| **11** Other income (loss) | A 5,632. | |
| **12** Section 179 deduction | | |
| **13** Other deductions A 9,512. | | |
| **14** Self-employment earnings (loss) | | |
| A 58,465. | | |
| C 2,954,969. | | |

*See attached statement for additional information.

## Part I  Information About the Partnership

**A** Partnership's employer identification number
43-2029504

**B** Partnership's name, address, city, state, and ZIP code

BERNSOHN AND FETNER LLC
625 WEST 51ST STREET
NEW YORK, NY  10019

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II  Information About the Partner

**E** Partner's identifying number
██████████

**F** Partner's name, address, city, state, and ZIP code

STEVEN FETNER
12 VAN HOUTEN STREET
UPPER NYACK, NY  10960-1529

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?  INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here …… ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 99.0000000% | 99.0000000% |
| Loss | 99.0000000% | 99.0000000% |
| Capital | 50.0000000% | 50.0000000% |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 0. |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 153,797. |
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | -13,925. |
| Withdrawals & distributions | $( | 10,673.) |
| Ending capital account | $ | 129,199. |

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book

☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

For IRS Use Only

10550328 135009 4550        2016.03020 BERNSOHN AND FETNER LLC        4550___1

SCHEDULE K-1          NONDEDUCTIBLE EXPENSES, BOX 18, CODE C

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND | NONDEDUCTIBLE PORTION | |
| ENTERTAINMENT EXPENSES | | 38,009. |
| OFFICER'S LIFE INSURANCE | | 30,501. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 68,510. |

651113

| | | |
|---|---|---|
| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0123 |

**Schedule K-1**
**(Form 1065)**

**2016**

For calendar year 2016, or tax
year beginning _____
ending _____

Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Deductions,
Credits, etc.**

▶ **See separate instructions.**

### Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | |
|---|---|---|
| **1** Ordinary business income (loss)  591. | **15** Credits | |
| **2** Net rental real estate income (loss) | | |
| **3** Other net rental income (loss) | **16** Foreign transactions | |
| **4** Guaranteed payments | | |
| **5** Interest income  57. | | |
| **6a** Ordinary dividends | | |
| | **17** Alternative min tax (AMT) items | |
| **6b** Qualified dividends | A  -10. | |
| **7** Royalties | | |
| **8** Net short-term capital gain (loss) | **18** Tax-exempt income and nondeductible expenses | |
| | C*  384. | |
| **9a** Net long-term capital gain (loss) | | |
| **9b** Collectibles (28%) gain (loss) | **19** Distributions | |
| **9c** Unrecaptured sec 1250 gain | | |
| | **20** Other information | |
| **10** Net section 1231 gain (loss) | A  57. | |
| **11** Other income (loss) | | |
| **12** Section 179 deduction | | |
| **13** Other deductions | | |
| A  96. | | |
| **14** Self-employment earnings (loss) | | |
| A  591. | | |
| C  29,848. | | |

*See attached statement for additional information.*

### Part I — Information About the Partnership

**A** Partnership's employer identification number
43-2029504

**B** Partnership's name, address, city, state, and ZIP code

BERNSOHN AND FETNER LLC
625 WEST 51ST STREET
NEW YORK, NY  10019

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

**E** Partner's identifying number
████████████

**F** Partner's name, address, city, state, and ZIP code

MAX FETNER
12 VAN HOUTEN STREET
UPPER NYACK, NY  10960-1529

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner?  INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 1.0000000% | 1.0000000% |
| Loss | 1.0000000% | 1.0000000% |
| Capital | 0.0000000% | 0.0000000% |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 0. |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 923. |
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | 168. |
| Withdrawals & distributions | $( | ) |
| Ending capital account | $ | 1,091. |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

For IRS Use Only

SCHEDULE K-1          NONDEDUCTIBLE EXPENSES, BOX 18, CODE C

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 384. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 384. |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>BERNSOHN & FETNER LLC,<br><br>            Debtor. | Chapter 11<br><br><br>Case No.  17- |

**DECLARATION OF STEVEN FETNER PURSUANT TO LOCAL**
**BANKRUPTCY RULE 1007-2 AND IN SUPPORT OF**
**CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, Steven Fetner, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct as of this 6th day of November, 2017:

1.      I am the Managing Member and co-founder of Bernsohn & Fetner, LLC, a New York limited liability corporation, the debtor and debtor-in-possession herein (the "Debtor"), and am generally familiar with the Debtor's day to day operations, business, financial affairs, and books and records.

2.      On November 7, 2017 (the "Petition Date"), the Debtor is commencing a case by filing a petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Chapter 11 Case"). The Debtor is currently operating its business and managing its affairs as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108, albeit the Debtor is currently in a wind-down mode. To date, no creditors' committee has been formed in this Chapter 11 Case, and no trustee or examiner has been appointed. Utilizing

the Bankruptcy Code to reorganize its affairs and pay it subcontractors offers the only avenue by
which Debtor could hope to re-commence its business.

3.      I submit this declaration (the "Declaration"), pursuant to Rule 1007-2 of the Local
Bankruptcy Rules for the Southern District of New York (the "Local  Rules"), to provide an
overview of the Debtor, its business and the Chapter 11 Case, as well as to support the Debtor's
chapter 11 petition and the motions and applications seeking various types of relief upon
commencement of the Chapter 11 Case (collectively, the "First Day Motions"). I have been in a
management position with the Debtor since it was incorporated on September 30, 2003, and as a
result of my work with the Debtor, my review of relevant documents, and my discussions with
others familiar with the Debtor, I am familiar with the Debtor's day-to-day operations, business
affairs, financial affairs, and books and records. Except as otherwise noted, I have personal
knowledge of the matters set forth herein, and all facts set forth in the Declaration are based on
my personal knowledge, my discussions with others familiar with the Debtor, my review of
relevant documents, or my opinion based on my experience and knowledge of the Debtor's
operations and financial conditions. In making this Declaration, I have relied in part on
information and materials that the Debtor's advisors have gathered, prepared, verified and
provided to me, in each case under my ultimate supervision, at my direction, and/or for my
benefit in preparing the Declaration. I am authorized to submit this Declaration on behalf of the
Debtor, and, if called upon to testify, I could and would testify competently to the facts set forth
herein.

4.      This declaration is divided into three parts. Part I provides background
information about the Debtor, its business, capital structure, restructuring efforts, and the events
leading up to the filing of the Chapter 11 Case. Part II sets forth the relevant facts and

considerations in support of each of the First Day Motions. Finally, Part III provides the specific

information required by Local Bankruptcy Rule 1007-2.


## PART I
### The Debtor

**A.      History and Business of the Debtor**

5.      I founded the Debtor and incorporated it as a New York limited liability company

together with my partner, Randall Bernsohn ("Bernsohn"), on September 30, 2003. Bernsohn

and I had already been working together in the construction industry for 20 years. From the

beginning, we each held a 50% membership interest in the Debtor. We envisioned the company

as a full-service construction management and general contracting firm dedicated to delivering

high end, high quality residential, corporate and retail construction. We worked through our staff

of highly-qualified on-site project managers and supervisors who gave personal attention to

every client. Most of the actual work was through subcontractors; although, some of the crews

were our own employees.

6.      Due to our high-quality workmanship, personalized service and meticulous

attention to detail, we soon developed a reputation for being one of the go to firms for high-end

residential renovations. We undertook renovation projects where the renovations alone were

multimillion dollar projects. To provide the highly personalized service for which the Debtor was

prized by clients, we could only take on a few jobs at any given time, but since our jobs are very

large, this was ample for the Debtor to succeed. Our reputation for quality was the touchstone of

the business, and most of our business came from word-of-mouth.

7.      In addition to our high-end full-service construction management and general

contracting, the Debtor offers a maintenance service which does all of the maintenance for major

New York buildings. While the maintenance service was never a large part of the Debtor's revenues, it provided a steady, reliable source of income which allowed the Debtor to service its overhead expenses while awaiting the bigger profits from construction jobs which only paid periodically.

8.      From the beginning, the Debtor eschewed debt, which also limited the number of jobs the Debtor could take on at one time. As of the Petition Date, the Debtor had no secured debt.

**B.      Events Leading to the Chapter 11**

9.      In 2015, the Debtor was winding down three large jobs, and had two new large, multi-year renovation projects in the pipeline ready to start. At this time, however, it became apparent that my partner, Bernsohn, wanted to retire.  As a consequence, Bernsohn exercised a put on an existing put/call agreement with the Debtor, and as of July 9, 2015, the Debtor and Bernsohn entered into a redemption agreement pursuant to which the Debtor agreed to redeem all of Bernsohn's equity interest in the Debtor, as well as his equity interest in certain other entities in which he and I had invested together (the "Redemption Agreement"). The aggregate purchase price for the equity interests was One Million Four Hundred Eighty Five Thousand Dollars ($1,485,000) (the "Purchase Price"), payable Eight Hundred Sixty Thousand Dollars ($860,000) at the closing of the transaction, and Six Hundred Twenty Five Thousand Dollars ($625,000) in equal monthly installments of $11,574 each from September 1, 2015, through February 1, 2020.

10.      The Redemption Agreement closed on or about August 24, 2015, obligating the Debtor to pay $860,000 at the closing. In addition, at the closing, as further consideration for the equity purchase, the Debtor entered into a consulting agreement with Bernsohn as of September

4

1, 2015, pursuant to which Bernsohn agreed to assist in the furtherance of the Debtor's business

and to provide assistance on projects that Bernsohn introduces to the Debtor (the "Consulting

Agreement"). The Debtor paid Bernsohn $860,000 on the Redemption Agreement at the closing

and commenced making the $11,574 monthly payments. At the time, the Purchase Price seemed

reasonable given the projects the Debtor had on hand. In hindsight, however, it is clear that the

Debtor vastly overpaid for the acquired equity interests. In addition, the $860,000 cash payment

at closing required a significant portion of the Debtor's available cash. This proved to make it

difficult, if not impossible, for the Debtor to weather the problems which proved to be just ahead.

11.     The Consulting Agreement required Bernsohn to receive a percentage

commission on all jobs introduced to the Debtor by him, as well as an expense allowance of

$7,500 per month from September 1, 2015, through January 31, 2016, and $5,000 per month

from February 1, 2016, through February 28, 2020. The Debtor began paying Bernsohn's

expenses consistent with the Consulting Agreement on or about September 1, 2015, but

Bernsohn never provided any consulting services to the Debtor nor introduced any jobs to the

Debtor.

12.     All told, to date Debtor has paid Bernsohn or his designees $1,056,758 under the

Redemption Agreement and $90,024 under the Consulting Agreement.  In addition, as part of the

agreements, the Debtor, at the closing, was required to execute several confessions of judgment

with respect to the amounts that the Debtor would owe to Bernsohn in the future under both the

Redemption Agreement and the Consulting Agreement.

13.     After Bernsohn left the Debtor, it became increasingly difficult to collect on some

of the Debtor's outstanding receivables, and we were forced to engage in litigation and/or

arbitration to collect. This really squeezed the Debtor, as it had very little cushion after the payments under the Redemption Agreement.

14.     The Debtor had expected Bernsohn's departure to be seamless, but this did not prove to be the case. Both Bernsohn and myself had been the face of the company in the small, tight-knit community of high-end residential renovation construction. There were ripples in the industry caused by Bernsohn's departure, and parties questioned whether the Debtor could continue to do the job with Bernsohn gone. I attempted to allay the concerns of our clients and the industry, but debunking this speculation took a huge amount of my time and left me with little time to sell new jobs. Traditionally, the work had been brought in by Bernsohn and myself, and the Debtor did not have an established salesforce.

15.     Around this time, our construction services manager, Guido Rebosio, realizing that the company was facing difficulties, felt he was in a good bargaining position to insist on increases in his compensation and other concessions from the Debtor. As Managing Member, I did not believe that the demands made by Rebosio were in the best interests of the Debtor, and I refused to meet all of them. As a consequence, Rebosio left the Debtor's employ. Unexpectedly, he took some of the Debtor's maintenance business  and some of the Debtor's clients with him, as he had had access to all of those clients. This was a blow to the Debtor, as it depleted our source of regular monthly revenue.

16.   Rebosio's's departure caused further ripples. Coming so soon on the heels of Bernsohn's departure, our existing and prospective clients really questioned whether the Debtor could do the job. Although there was no question that we could continue to offer the same fine construction services, the perception was otherwise. I was spending almost full-time allaying our existing and prospective clients' concerns.

17.     The Debtor had just started two large, new jobs which would have carried us through this difficult period. On one of the jobs, on East 78th Street, there were problems, including allegations by the next-door neighbor that the Debtor had cracked his foundation. As the problems mounted, the Debtor deemed it appropriate to change the site manager. This change in personnel caused further concern to the client, who eventually terminated the Debtor's contract without paying for all of the work that had been done to date. The Debtor is currently in an arbitration concerning the receivable from this project.

18.     Without the income from this new job, the Debtor concentrated all of its efforts on our other new job which was downtown. Unfortunately, the client realized that Debtor was over a barrel and kept asking for further price concessions. As a result, our profit margin on the job was diminishing. During this time, the Debtor was slow to react and did not cut down on payroll as quickly as it perhaps could have. The Debtor was optimistic that new work would become available and was loathe to let talented people go, especially in light of the perception problem created by all of the recent departures.

19.     The downtown client became increasingly difficult to work with, and I was spending most of my time dealing with this project and this client, as opposed to getting in new work. Eventually, the client decided to rebid the job to six bidders despite our signed letter of intent. A lower bid came in, and the client awarded the rest of the job to another party. The Debtor is currently in an arbitration concerning the receivable from this project.

20.     Although the Debtor was still capable of doing its usual outstanding work, losing two major jobs one after the other added to the misconception that the Debtor could not deliver after the departures of Bernsohn and Rebosio. Furthermore, the continuing payments under the Redemption Agreement and the Consulting Agreement, coupled with the high payroll, left the

company with insufficient resources with which to regroup, fight the misconceptions and obtain

new business. We could not take on new business without paying our existing subcontractors,

and the Debtor did not have the resources to do that. At that point, the only prudent thing to do

was to begin to wind-down the affairs of the Debtor, which the Debtor commenced to do.

21.     By early 2017, the Debtor had let all of its personnel go except for myself, and I

was working reduced hours. Even so, the Debtor did not have the funds to pay my salary, which

accrued but has not been paid to this day. The Debtor moved out of its location and created an

office in my home to save on rent. The Debtor's only assets by this time, in addition to its name

and goodwill, were its receivables, some cash, and the cash collateral posted for an international

letter of credit, as detailed more fully herein. My main focus has been collecting the receivables,

so that, the Debtor can pay its creditors. With no source of income, it became apparent that the

Debtor could not continue to make monthly payments under either the Redemption Agreement

or the Consulting Agreement, and the Debtor so informed Bernsohn. The Debtor remained (and

remains) hopeful that it could collect its receivables in an amount sufficient to pay its creditors,

and that once its creditors were paid, it could re-commence taking on new jobs, rising Phoenix-

like from the ashes.

22.     On February 1, 2017, Debtor failed to make the monthly payment of $11,574 to

Bernsohn under the Redemption Agreement, triggering a default which the Debtor was unable to

cure. In May 2017, using the confessions of judgment which the Debtor had executed at the

closing of the Redemption Agreement, Bernsohn obtained two judgments against the Debtor in

the aggregate amount of $326,121.00.

23.     The Debtor communicated with Bernsohn and/or his lawyers to explain that the

Debtor was engaged in an orderly wind-down, but that it would take time, as, the primary assets

of the Debtor were disputed receivables. The Debtor explained that it hoped to collect what it could on the receivables and distribute the amount among Debtor's creditors, splitting any monies leftover with Bernsohn as an equity claimant.  Once it satisfied its subcontractors, the Debtor could continue to do business on a reduced scale.

24.     The Debtor continued to work hard at collecting the disputed receivables and was on the verge of reaching settlements with respect to several disputed receivables when, in or about June, 2017, Bernsohn served restraining notices on both the Debtor and the Debtor's primary bank (the "Restraining Orders") which purport to restrain both the Debtor and its primary bank from spending, transferring or alienating any of the Debtor's assets whatsoever.

25.     The Debtor wished to consummate several settlements of the disputed accounts receivable and expected to pay the proceeds pro rata across all of its creditors, but it is unable to do so with the Restraining Orders in place. All proceeds of such settlements would go to Bernsohn at the expense of all other creditors. Further settlement negotiations with Bernsohn proved fruitless. It became apparent that the only way in which the Debtor would be able to treat all of its creditors fairly and make payments to subcontractors, so that, it could restart its business was in a chapter 11 proceeding. The Debtor also believes that chapter 11 offers the best forum for it to collect its disputed receivables and realize assets for its creditors. Once the Debtor treats all of its creditors fairly, there would be nothing to prohibit it from taking on new business which it is not capable of doing at this point in time.

## C.      The Debtor's Capital Structure

26.     The Debtor has no secured debt. Except as noted below, it has no obligations for borrowed funds.

27.     The Debtor has assets of approximately $1,735,000 consisting mainly of disputed accounts receivable; and liabilities, some of which may be disputed, of approximately $920,000.

28.     Prior to the filing of this Chapter 11 Case, the Debtor did not have sufficient resources to pay the professionals necessary to accomplish this filing, and even if it had had the resources, the Restraining Orders would have prevented it from doing so. I understand that I could not pay the professionals' bills myself for fear of creating a lack of disinterestedness. Accordingly, in order to assure that the Debtor had the quality of professionals necessary to implement this Chapter 11 Case, I paid the professionals as a loan to the Debtor and took back from the Debtor an unsecured promissory note in the amount of $50,652. I believe this did not violate the Restraining Orders, as it neither alienated nor diminished any assets of the Debtor, and was in fact necessary to the preservation of those assets for all creditors.

29.     The $50,652 promissory note to myself is the Debtor's only obligation for borrowed funds.

30.     In or about June, 2011, International Fidelity Insurance Company ("IFIC") issued a bond to discharge a mechanic's lien against the Debtor filed by Island Architectural Woodwork. The bond was collateralized by a fully cash collateralized international letter of credit posted by the Debtor in the amount of $217,855. The letter of credit and its collateral was held by IFIC as its property, with the agreement that if the dispute with Island Architectural Woodwork was eventually settled for less than $217,855, the remainder, minus IFIC's expenses and legal fees, would be returned to the Debtor. It is my understanding that the dispute has been settled for less than the full amount of the letter of credit, that IFIC has pulled down the entire amount of the letter of credit, and at this point owes the Debtor approximately $116,000. This amount is a return of the Debtor's capital and is not listed as a receivable.

10

31.     The Debtor is an LLC and has 400 membership units outstanding. Three hundred and ninety-six of the outstanding membership units belong to myself, Steven Fetner.  Four membership units belong to Maximillian Ezekiel Fetner. The capital accounts of the members are negative. The Debtor has no outstanding securities which are publicly held.

## PART II
## First Day Motions

32.     In furtherance of this Chapter 11 Case, the Debtor expects to file a number of motions and applications on or about the same day as the Petition Date. I am referring to these pleadings as "First Day Motions", although, I understand that these pleadings do not have the urgency associated with typical first day motions. Nonetheless, I felt it was important to provide the court with my rationale for filing these First Day Motions.  I have reviewed each of these First Day Motions and proposed orders (including the exhibits thereto) and the facts set forth therein are true and correct the best of my knowledge, information, and belief. Moreover, I believe that the relief sought in each of the First Day Motions is vital to enable the Debtor to transition into Chapter 11 and to maximize value during the Chapter 11 Case. I have had the opportunity to ask my advisors about the customary practice with respect to First Day Motions and believe that I understand the rationale for all of the pleadings.

A.     **Extension and Waiver Motion**

33.     The Debtor seeks entry of an order granting the Debtor an additional 30 days from the statutory period to file its Schedules of Assets and Liabilities, its Schedules of Current Income and Expenditures, and its Statement of Financial Affairs (together, the "Schedules and Statement"), as well as a modification of the reporting requirements pursuant to Bankruptcy Rule

2015.3, for cause, waiving the requirement of providing the financial information otherwise

required by Bankruptcy Rule 2015.3.

34.    The Debtor has been operating in a wind-down mode since Fall 2016. All of its

personnel other than myself were let go by February 28, 2017, and the Debtor has not had the

regular services of a bookkeeper, controller, accountant or chief financial officer since that time.

Accordingly, the books and records of the Debtor are not in perfect order. I have worked hard

with my counsel and past personnel of the company in order to put this filing together, but it has

been very difficult. The Debtor clearly needs more time in which to organize its books and

records.

35.    Additionally, the Debtor has been unable to engage the services of an accountant

or financial advisor to date, because, it has no funds which are not restrained by the Restraining

Orders with which to hire the accountant or financial advisor necessary to prepare the Schedules

and Statement. The Debtor believes that upon collection of some of its outstanding receivables,

which it believes is imminent; it will have the funds available to retain an appropriate accountant

or financial advisor. The Debtor is having difficulty, however, engaging such person prior to

collecting the funds to assure the accountant or financial advisor of payment. As a result, the

Debtor may not be in a position to hire the necessary accountant or financial advisor to help with

preparing the Schedules and Statement until after it has collected some receivables. At such time

as the Debtor is able to retain the appropriate financial advisor, it will take some time for such

person to get up to speed sufficiently to be able to prepare the Schedules and Statement.

Accordingly, I believe that allowing the Debtor additional time to file its Schedules and

Statement will result in better and more accurately prepared documents on which the Court and

all parties in interest can rely.

36.     Debtor is requesting a waiver of the reporting requirements of Bankruptcy Rule 2015.3 for cause.  Debtor submits that at the time of the Redemption Agreement, the Debtor, in addition to redeeming Bernsohn's membership units in the Debtor, as part of the arrangement, bought Bernsohn's equity interests in certain other entities which Debtor nominally still holds, to wit: Sneden Place Development Corporation, a New York corporation ("SPDC"); SVC Eexcel Housing Development Fund Corp., a New York not-for-profit corporation ("SEHDFC"); and B&F Building Corp., a New York corporation ("Building"). These were never intended to become a part of Debtor's business. The purchase price allocated to each of these entities was as follows:

        SPDC.................................$10
        SEHDFC  .........................$10
        Building............................$10

Thus, the Debtor's total investment in these entities, had it paid off the Redemption Agreement in full, would be $30.

37.      Although the Debtor continues to carry its interest in these entities on its books and records, none of these entities are currently operating or have any assets. Accordingly, doing a valuation of these entities would cost considerably more than the entities are worth, and providing periodic financial reports when the companies are not operating would serve no purpose. I, therefore, believe that it is in the best interests of the Debtor, its estate and its creditors to relieve the Debtor from the burden and expense of filing the reports required by Bankruptcy Role 2015.3 for cause shown.

**B.     Debtor's Application to Retain Counsel**

38.     Debtor has filed an application for entry of an order authorizing the employment of Mayerson & Hartheimer, PLLC ("M&H"), effective as of the Petition Date.

39.    I have been working with M&H for several months now and know them to be highly competent bankruptcy counsel. In addition, they are familiar with the Debtor, its books and records. I believe that their knowledge of the Debtor and the Bankruptcy Code is critical to a successful outcome of this Chapter 11 Case. I believe that their fees are in line with, or less than, the fees of bankruptcy professionals with similar credentials. Accordingly, I believe that it is in the best interests of the Debtor, its estate and its creditors to have the services of M&H.

## C.    Interim Compensation Motion

40.    The Debtor seeks entry of an order establishing procedures for interim compensation and reimbursement of professionals' expenses during this Chapter 11 Case.

41.    It has been very difficult for the Debtor with its limited resources to attract the services of competent professionals in this Chapter 11 Case. Any professional coming into this case is taking a risk as to whether the Debtor will collect sufficient receivables in order to pay their fees. Accordingly, I believe that it is imperative to establish orderly procedures for addressing issues related to the payment of professionals on a monthly basis in this Chapter 11 Case in order to attract and retain the appropriate professionals to this Chapter 11 Case.  Given the Debtor's precarious financial position, I doubt that I would be able to attract qualified professionals to work on this Chapter 11 Case without offering monthly interim compensation. In addition, the regular submission of interim fee requests will allow all interested parties to monitor the costs of this Chapter 11 Case on a timely basis and will allow the Debtor to more accurately forecast its cash flow and better administer its cash position. Additionally, these procedures will permit the Court and parties in interest, including the United States Trustee, to more easily assess the reasonableness of the requested compensation and reimbursements.

14

## PART III
## Information Required by Local Bankruptcy Rule 1007-2

42.     Local  Rule 1007-2 requires certain information related to the Debtor, which is

set forth herein. The information required by Local Rules 1007-2 (a) (1), 1007-2 (a) (6), and

1007-2 (a) (7) is set forth in Part I above.

43.     The Debtor submits that the information required by Local Rules 1007-2 (a) (2),

1007-2 (a) (3), and 1007-2 (a) (5) is not required because, as set forth in Part I, this case was not

originally commenced under either Chapter 7 or Chapter 13; no committee of creditors has been

organized prior to the Petition Date; and there are no holders of secured claims against the

Debtor.

44.     Pursuant to Local Rule 1007-2 (a) (4), Schedule 1 attached hereto lists the

following information with respect to the holders of the twenty (20) largest unsecured claims

against the Debtor, excluding insiders: the name, the address (including the number, Street,

apartment or suite number, and ZIP Code, if not included in the post office address), the

telephone number, the name (s) of the person (s) familiar with the Debtor's account, the amount

of the claim, and an indication of whether the claim is contingent, unliquidated, disputed, or

partially secured, to the extent known to the debtor.

45.     Pursuant to Local Rule 1007-2 (a) (8), the Debtor submits that the only property

of the Debtor in the possession or custody of a third-party is the cash collateral held by

International Fidelity Insurance Company to collateralize that certain Bond to Discharge

Mechanic's Lien as described in Part I above. The Debtor believes that approximately $116,000

of cash collateral due to be returned to the Debtor is held by the International Fidelity Insurance

Company, Baltimore Regional Claims Office, 11350 McCormick Road, Executive Plaza III,

Suite 907, Hunt Valley, MD 21031; Telephone: 410-527-3461. The Debtor was a plaintiff in a

breach of contract action against Island Architectural Woodworkers and a defendant in a

mechanic's lien foreclosure action brought by Island Architectural Woodworkers, which were

consolidated. Both suits have been settled. They were pending in the Supreme Court of the State

of York, County of New York.

46.     With respect to Local Rule 1007-2 (a) (9), the Debtor operates its business from

12 Van Houten Street, Upper Nyack, NY 10960. That property is owned by the Debtor's

Managing Member, and the Debtor does not pay any rent, nor does it have a written lease.

47.     With respect to Local Rule 1007-2 (a) (10), the location of all of the Debtor's

assets, as well as its books and records, is 12 Van Houten Street, Upper Nyack, NY 10960. The

Debtor does not hold any assets outside of the territorial limits of the United States.

48.     With respect to Local Rule 1007-2 (a) (11), Schedule 2 attached hereto lists the

litigations and arbitrations in which the Debtor is currently engaged, along with the nature and

present status of each.

49.     With respect to Local Rule 1007-2 (a) (12), the Managing Member and co-

founder of the Debtor is Steven Fetner. Mr. Fetner has been with the Debtor since it was

founded. He has over 35 years of experience in the general construction business where he has

had the opportunity to execute, and then to direct, activities in every facet of construction and

construction management. Mr. Fetner is currently the only employee and the sole manager of the

Debtor. As such he is responsible for all of the day-to-day activities of the Debtor.He works for

the Debtor part-time.

50.     With respect to Local Rule 1007-2 (b), at present the Debtor is operating in a

wind-down mode. It has not operated its business since March 1, 2017, but continues to actively

pursue collection of its receivables. If the Chapter 11 Case is successful in restructuring the debts

and aiding in collecting the receivables of the Debtor, Debtor could conceivably restart its business. Currently, the Debtor has no assets with which to pay employees or professionals; although, it expects to bring several settlements of outstanding receivables before this Court in the immediate future. If the Debtor is successful in collecting some receivables, it would intend to pay its only employee, the Managing Member, a weekly salary of $1500. It would also expect to pay its professionals on a current basis. At present, Debtor has filed a motion to retain M&H as its counsel, but has made no arrangements to hire an accountant or financial advisor.

[REMAINDER OF PAGE DELIBERATELY LEFT BLANK]

## CONCLUSION

I hereby declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief, and respectfully request that all of the relief requested in the First Day Motions be granted, together with such other further relief as this Court deems just and proper.

Dated: November 6, 2017            BERNSOHN & FETNER LLC
      New York, New York            Debtor and Debtor-in-Possession

                                   By: /s/Steven Fetner
                                      Steven Fetner
                                      Managing Member

SCHEDULE   1

| Fill in this information to identify the case: |
| --- |
| Debtor name    **Bernsohn & Fetner LLC** |
| United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF NEW YORK** |
| Case number<br>(if known) |

☐ Check if this is an amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case.  Include claims which the debtor disputes.  Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claims resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount.  If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | JVA Industries<br>522 US Highway 9 North #175<br>Manalapan, NJ 07726 | Joe Alfano<br>(732) 605-1987<br>jalfano@jvaindustries.com | Trade | | | | $100,000.00 |
| 2 | Wasserman Grubin & Rogers<br>1700 Broadway<br>42nd floor<br>New York, NY 10019 | Michael Rogers<br>(212) 581-3320<br>MRogers@WGRLAW.com | Attorney Fees | | | | $75,000.00 |
| 3 | Rimi Woodcraft<br>1185 Commerce Avenue<br>Bronx, NY 10462 | Tony Rizzo<br>(718) 824-3900<br>arizzo@rimi.net | Trade | | | | $50,000.00 |
| 4 | Precision Stone<br>95 Hopper Street<br>Westbury, NY 11590 | Jon Tibett<br>(631) 979-3920<br>jon@precisionstone.net | Trade | | | | $39,324.00 |
| 5 | Richard Mugler<br>2401 Third Avenue<br>Bronx, NY 10451 | Richard Mugler<br>(914) 964-1071<br>rcmco@verizon.net | Trade | Disputed | | | $19,250.00 |

Debtor    **Bernsohn & Fetner LLC**                                          Case number (if known) _____
         Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 6  Team Electric 20 W 36th St, Suite 702 New York, NY 10018 | Robert Logozio (212) 685-8585 rlogozio@teamelectriccorp.com | Trade | Disputed | | | $16,016.00 |
| 7  Alba Demolition 237 West 35th Street New York, NY 10001 | Kieran Ferguson (917) 217-0459 kieran@albademo.com | Trade | Disputed | | | $15,980.00 |
| 8  Atlantech Systems Inc 349 Spook Rock Road Bldg. G Suffern, NY 10901 | (845) 641-3368 cturziano1@aol.com | Trade | Disputed | | | $14,697.00 |
| 9  Kern Rockenfield, Inc 178 Classon Avenue Brooklyn, NY 11205 | John Kern (718) 230-7878 jkern@kernrock.com | Trade | | | | $12,943.00 |
| 10  Arista Air Conditioning Corp. 3826 10th Street Long Island City, NY 11101 | Stanley Berger (718) 706-4444 shberger@aristair.com | Trade | Disputed | | | $12,000.00 |
| 11  Architectural Flooring Resource, Inc. 135 W 27th Street 6th fl New York, NY 10001 | Rene Cisneros 212.290.0200 Rene@afrny.com | Trade | | | | $7,621.00 |
| 12  Skyline Scaffolding Group, Inc. 181 Coit Street Irvington, NJ 7111 | Sal Redza (732) 985-0013 (sal@skylinescaffold.net) | Trade | Disputed | | | $5,856.00 |
| 13  RCS Corporate Sales and Professional Ser 1674 Broadway Suite 7C New York, NY 10019 | Jeffrey Tebele (212) 532-9111 jeffrey@rcsexperience.com | Professional Services | | | | $1,933.00 |

Debtor    **Bernsohn & Fetner LLC**_____    Case number (if known) _____
Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 14 Con Edison 4 Irving Place Room 1875S New York, NY 10003 | | Utility | | | | $1,800.00 |
| 15 Atlantic De Lage 134 W 26th St New York, NY 10001 | Larry Weiss (212) 507-9411 lweiss@tomorrowsoffice.com | Trade | | | | $1,500.00 |
| 16 Grossbach Zaino & Associates, PC 6 International Drive Suite 130 Rye Brook, NY 10573 | Len Fruchter 914-468-0400 lfruchter@gzcpas.com | Professional Services | | | | $1,120.00 |
| 17 Verizon Wireless 500 Technology Drive Suite 550 Weldon Springs, MO 63304 | | Utility | | | | $700.00 |
| 18 Verizon Office 500 Technology Drive Suite 550 Weldon Springs, MO 63304 | | Utility | | | | $450.00 |
| 19 Time Warner 60 Columbis Circle New York, NY 10023 | | Utility | | | | $207.00 |
| 20 Emque 527 Townline Rd Happauge, NY 11788 | 631 979 9750 | Trade | | | | $100.00 |

SCHEDULE 2

**Schedule of Proceedings against Debtor Pursuant to Local Rule 1007-2(a)(11)**

1.   Bernsohn & Fetner LLC v. MG Dolphin, LLC and LG Blessed, LLC
   American Arbitration Association
   Case Number 01-17-0001-8925

   A.   Nature of Proceeding
      Debtor brought an arbitration for breach of contract seeking to recover for services performed and wrongful termination.  Debtor claims it is owed $614,231. The client has counterclaimed for $353,606.

   B.   Status of Proceeding
      Settlement negotiations are ongoing. The parties are in the process of picking an arbitrator.

2.   A group of 10 consolidated cases pending the Supreme Court of the State of New York, County of New York, in which David P. Kaplan and Marcia P. Kaplan sued the Debtor and various subcontractors of the Debtor, and the Debtor and certain of the subcontractors countersued, as did certain insurance companies. The lead case is styled *David P. Kaplan and Marcia P. Kaplan v. Bernsohn & Fetner, LLC, Forte Express Plumbing & Heating, Inc., Harleysville Insurance Company and The Hanover Insurance Group,* Index No. 652031/13.

   A.   Nature of Proceeding
      These consolidated cases stem from two water leaks originating in the apartment of Debtor's clients, David and Marcia Kaplan. The Kaplan's are seeking damages from the Debtor in the approximate amount of $150,000. The Debtor is seeking payment from the Kaplans of unpaid fees in the amount of $238,635.

   B.   Status of Proceeding
      The litigation is ongoing.

3.   Randall Bernsohn v. Bernsohn & Fetner LLC
   Supreme Court of the State of New York, County of New York
   Index No. 652482/2017

   and

   Randall Bernsohn v. Bernsohn & Fetner LLC

Supreme Court of the State of New York, County of New York
Index No. 652749/2017

A. Nature of Proceedings

These two cases arise from two separate confessions of judgment executed by the Debtor in connection with the Redemption Agreement and the Consulting Agreement between the Debtor and the Debtor's co-founder and 50% equity owner, Randall Bernsohn. When the Debtor could no longer meet the ongoing payments under the Redemption Agreement and Consulting Agreement, Bernsohn filed the confessions of judgment and got two judgments against the Debtor, one in the amount of $103,463.55, and one in the amount of $222,657.45.

B. Status of Proceedings

Bernsohn has filed information requests on both the Debtor and numerous third parties. In addition, Bernsohn has filed the Restraining Orders against both the Debtor and its primary bank, which completely tied up the Debtor's assets. There are no settlement negotiations ongoing.

WRITTEN CONSENT OF MANAGING MEMBER OF

BERNSOHN & FETNER LLC

NOVEMBER 3, 2017

The undersigned, being the Managing Member and holder of 99% of the outstanding membership units (the "Member") of Bernsohn & Fetner LLC, a New York limited liability company ("B&F"), hereby consents in writing to the adoption of the following resolutions and the taking of the actions described therein.

WHEREAS, the Member has reviewed and considered materials presented by legal and financial advisors of B & F regarding the liabilities and liquidity situation of B & F, the strategic alternatives available to it, and the impact of the foregoing on the business of B & F;

WHEREAS, certain restraining orders have been filed against assets of B & F which are preventing B & F from operating in the normal course of business and conducting the business of B & F in a manner that is favorable to all of its stakeholders;

WHEREAS, the member has received advice from the legal and financial advisors of B & F regarding the possible need to liquidate B & F or to restructure its debt, and has fully considered each of the strategic alternatives available to B & F, and the impact of the foregoing on the business and stakeholders of B & F;

WHEREAS, the Member has reviewed and considered the recommendations of the legal and financial advisors to B & F regarding the relief that would be necessary and advisable to obtain from a Bankruptcy Court to allow B & F to effectively transition into a chapter 11 under title 11 of the United States Code (collectively, the "First Day Relief");

WHEREAS, the Member has determined that it is fair, appropriate, advisable, necessary, and in the best interests of B & F, its creditors, members and other stakeholders that B & F file or cause to be filed a voluntary petition for relief under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. Secs. 101 *et seq.* (the "Bankruptcy Code") and seek the First Day Relief;

 WHEREFORE, the Member desires to approve the following resolutions:

RESOLVED, it is desirable and in the best interests of the creditors, members and other stakeholders, that B & F (i) file or cause to be filed a voluntary petition for relief pursuant to the provisions of chapter 11 of the Bankruptcy Code, and (ii) seek the First Day Relief;

RESOLVED, that Steven Fetner ("Fetner"), as an authorized signatory or in any other capacity (the "Authorized Officer"), acting alone, be, and hereby is, authorized and empowered to execute and file on behalf of B & F all petitions, schedules, lists and other motions, papers or documents which he deems to be necessary or advisable, and to take any and all actions that he deems necessary or proper to obtain relief pursuant to chapter 11 of the Bankruptcy Code and to obtain the First Day Relief;

RESOLVED that the Authorized Officer be, and hereby is, authorized and directed to continue to have Fetner serve as B&F's Managing Member and to take any actions which he deems necessary or advisable in connection with any case commenced by B&F under the Bankruptcy Code, and all related matters, and any such prior actions taken by Fetner are hereby ratified in their entirety;

RESOLVED, that the Authorized Officer be, and hereby is, authorized and directed in the name and on behalf of B&F to employ the law firm of Mayerson & Hartheimer, PLLC, as general bankruptcy counsel to represent and assist B & F in carrying out its duties under the Bankruptcy Code upon such terms and conditions as the Authorized Officer may deem appropriate, and any prior actions in connection with the employment of Mayerson & Hartheimer, PLLC, are hereby ratified in their entirety;

RESOLVED, that the Authorized Officer be, and hereby is, authorized and directed in the name and on behalf of B & F to employ any other professionals to assist B & F in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the rights, duties and obligations of B & F, upon such terms and such conditions as the Authorized Officer may deem appropriate;

RESOLVED, that the Authorized Officer is hereby authorized and directed in the name and on behalf of B & F to execute appropriate retention agreements, pay appropriate retainers, and cause to be filed all appropriate applications for authority to retain the services of the foregoing professionals as necessary or appropriate;

RESOLVED, that in addition to the specific authorizations heretofore conferred upon the Authorized Officer, each and every officer of B & F, whether now existing or subsequently

appointed, and their designees, shall be, and each of them, acting alone, hereby is, authorized, directed, and empowered in the name of and on behalf of B & F to take or cause to be taken any and all such further actions, to execute and deliver any and all agreements, certificates, instruments, and other documents, and to pay all expenses, including filing fees, in each case as in such officer's judgment shall be necessary or desirable to fully carry out the intent and accomplish the purposes of the Resolutions adopted herein;

RESOLVED that all acts, actions and transactions relating to the matters contemplated by the foregoing Resolutions done in the name of and on behalf of B&F, which acts would have been approved by the foregoing Resolutions except that such acts were taken before these Resolutions were adopted, are hereby in all respects approved and ratified in their entirety; and

RESOLVED, that any officer of the Corporation may certify a copy of these Resolutions as being in full force and effect until they are withdrawn in writing by the Member, and a copy of these Resolutions shall be filed in the records of B&F.

IN WITNESS WHEREOF, the undersigned Member of Bernsohn & Fetner LLC has executed this written consent, effective as of the date first appearing above.

By: _____

Steven Fetner,

As Managing Member of

BERNSOHN & FETNER LLC

I, Steven Fetner, the Managing Member of Bernsohn & Fetner LLC, hereby certify under penalty of perjury that the Forgoing written consent was duly adopted as of November 3, 2017, and remains in full force and effect without any new amendments or substitutions as of this 7th day of November, 2017.

_____

Steven Fetner