**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNSOHN & FETNER LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 17-23707 (RDD) |

**DECLARATION OF DAVID H. HARTHEIMER IN SUPPORT OF THE DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION OF MAYERSON AND HARTHEIMER PLLC AS BANKRUPTCY COUNSEL TO THE DEBTOR EFFECTIVE AS OF THE PETITION DATE**

I, David H. Hartheimer, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a member of the firm Mayerson and Hartheimer PLLC, ("M&H") which maintains offices for the practice of law at 845 Third Avenue, 11th Floor, New York, NY 10022. I am an attorney at law, admitted in, practicing in, and a member in good standing of the bars of the State of New York, the United States District Court for the Southern District of New York and the United States District Court for the Eastern District of New York.

2. I submit this declaration pursuant to Sections 327 (a) and 328 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") in support of the Debtor's Application For An Order Authorizing the Retention of M&H as Counsel to the Debtor Effective as of the Petition Date (the "Application") filed contemporaneously herewith by the debtor and debtor-in-possession in the above-captioned

case (the "Debtor"). Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

## QUALIFICATION OF PROFESSIONALS

3. The Debtor and M&H entered into an engagement agreement effective as of June 15, 2017 (the "Initial Engagement Agreement"), pursuant to which the Debtor retained M&H to provide legal services to the Debtor in connection with general restructuring issues and in connection with a potential bankruptcy filing by the Debtor. On or about October 15, 2017, the Debtor determined that a bankruptcy filing would be necessary. Consequently, on November 6, 2017, the Debtor and M&H entered into a separate engagement agreement (the "Bankruptcy Engagement Agreement"), pursuant to which the Debtor retained M&H to provide legal services to the Debtor in connection with general restructuring issues and to represent it in regards to a bankruptcy filing by the Debtor. The Bankruptcy Engagement Agreement is attached to the Application as Exhibit C.

4. Since their entry into the Initial Engagement Agreement, the Debtor and M&H have worked closely with respect to the Debtor's business and restructuring. As a result, M&H has become uniquely familiar with the Debtor's affairs as well as many potential legal issues that might arise in the context of the Debtor's Chapter 11 case. M&H has provided advice to and assisted the Debtor in all aspects of its restructuring efforts and has been instrumental in the Debtor's preparation of this case, including preparing and drafting various first-day motions, schedules and other documents and pleadings necessary for the successful filing of these cases.

5. M&H understands that the Debtor selected M&H as its general counsel because of M&H's experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code, as well as business experience. M&H

believes that its attorneys are highly qualified to provide these specialized legal services to the Debtor during this case.

6. I am, together with Sandra E. Mayerson, the principal M&H attorney working on this engagement. We have extensive experience in corporate restructuring, Chapter 11 reorganizations and related matters, and each have over 20 years of experience in Chapter 11 reorganization cases nationwide. Additionally, I am intimately familiar with bankruptcy law due to my service as an attorney with the United States Trustee in the Eastern District of New York from the years 1993 to 2000.

7. Due to the experience and knowledge of the M&H attorneys in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code, as well as the firm's intimate knowledge of the Debtor's affairs, M&H believes that it is well qualified and uniquely able to act on the Debtor's behalf and to guide it through the Chapter 11 case. Accordingly, subject to the Court's approval of the Application, M&H is willing to perform the services requested by the Debtor as set forth herein and in the Bankruptcy Engagement Agreement.

## SERVICES TO BE RENDERED

8. The Debtor has requested that M&H render various services to the Debtor, including (without limitation) the following:

 (a) Advising the Debtor with respect to its powers and duties as debtor and debtor-in-possession in the continued management and operation of its business;

 (b) Attending meetings and negotiation with representatives of creditors and other parties in interest and advising and consulting on the conduct of the case, including all of the legal and administrative requirements of operating in chapter 11;

3

(c) Taking all necessary action to protect and preserve the Debtor's estate including the prosecution of actions on behalf of the Debtor's estate, the defence of any actions commenced against the estate, negotiations concerning litigation in which the Debtor may be involved, and objections to claims filed against the estate;

(d) Preparing on the Debtor's behalf, all motions, applications, answers, orders, reports, and papers necessary to the administration of the estate;

(e) Preparing and negotiating on the Debtor's behalf, its Chapter 11 plan, disclosure statement, and all related agreements and/or documents, and taking all necessary action to obtain confirmation of such plan;

(f) Appearing before the Court, any appellate court, and the United States Trustee and protecting the interests of the Debtor before such courts and the United States Trustee,

(g) Advising the Debtor on general business matters and day-to-day operations;

(h) representing the Debtor in connection with obtaining post-petition financing;

(i) Advising the Debtor in connection with any potential sale of assets or potential settlement with respect to disputed assets;

(j) consulting with the Debtor and its financial advisors regarding tax matters; and

(k) Performing other necessary legal services and providing other necessary legal advice to the Debtor in connection with the Chapter 11 Case and the operation of its business.

9. M&H understands that the Debtor will file retention applications for other professionals in these cases. M&H has informed the Debtor that it will take all appropriate steps to avoid unnecessary and wasteful duplication of efforts by any other professionals retained in this Chapter 11 case.

## DISINTERESTEDNESS OF PROFESSIONALS

10. To the best of my knowledge, and except as otherwise set forth herein, attorneys of M&H, (a) do not have any connection with the Debtor, its affiliates, its creditors, or any other

4

party in interest, or their respective attorneys and accountants, the United States Trustee for the Southern District Court of New York or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the Southern District of New York or any person employed in the offices of the same,[1] (b) are "disinterested persons," as that term is defined in Bankruptcy Code Section 101(14), and (c) do not hold or represent any interest adverse to the Debtor's estate.

11.    I have caused a conflict check to be run on the M&H computer system for the following parties.

- All Creditors of the Debtor.
- All equity security holders of the Debtor.
- All parties with whom the Debtor is in litigation or arbitration.

In all cases, no conflict was shown.

12.    M&H will continue to comply with its ongoing duty to notify this Court if any actual conflict arises, and if necessary, arrange for an "ethical wall" with respect to the M&H attorney(s) who work(s) on the matter.

**PROFESSIONAL COMPENSATION**

13.    M&H has provided and agrees to continue to provide assistance to the Debtor in accordance with the terms and conditions set forth in the Application and the Bankruptcy Engagement Agreement. On June 15, 2017, pursuant to the Initial Engagement Agreement, the Debtor provided Mayerson and Hartheimer with a $5,000 payment as an advance payment retainer (the "Initial Retainer"). On or about October 15, 2017, pursuant to the Bankruptcy

---

[1] It should be noted, that I was an attorney at the Office of the United States Trustee, Eastern District of New York, from 1993 to 2000. I no longer have any connection with that office or any Office of the United States Trustee.

5

Retainer Agreement, the Debtor provided M&H with an additional retainer of $30,000 (the "Bankruptcy Retainer") (the Initial Retainer and the Bankruptcy Retainer shall be collectively referred to as the "Retainers"). At that time, M&H agreed that it would prepare the bankruptcy filing for the capped amount of $30,000. As set forth in both the Initial Engagement Agreement and the Bankruptcy Engagement Agreement, M&H was free to apply the Retainers to future billings and request that the Debtor replenish and/or increase the Retainers.

14. Prior to the Petition Date, M&H issued the following invoices:

(a) On July 21, 2017, M&H issued an invoice for services rendered in the month of June 2017 in the amount of $8,173.85. The Debtor paid M&H $3,137.85, and M&H applied the Initial Retainer of $5,000, to pay the July 21, 2017 invoice.

(b) On August 15, 2017, M&H issued an invoice for services rendered in the month of July 2017 in the amount of $8,402.00 which the Debtor paid in full.

(c) On September 11, 2017, M&H issued an invoice for services rendered in the month of August for 2017 in the amount of $14,736.80. As an accommodation to the Debtor, M&H reduced this invoice to $10,000 which the Debtor paid in full.

(d) On October 21, 2017, M&H issued an invoice for services rendered in September in the amount of $3,760.80.

(e) On November 6, 2017, M&H issued an invoice for services rendered from October 1, 2017 through November 5, 2017, in the amount of $33,490.30.

(f) On November 6, 2017 both the October 21, 2017 invoice referenced in paragraph (6d) above and the November 6, 2017 invoice referenced in paragraph (6e) above were due and owing for a total amount of $37,251.10. As per the agreement described in paragraph 13 above, M&H accepted the $30,000 retainer that it was holding in its IOLA account in full payment of the two outstanding invoices.

15. In the 90 days prior to the Petition Date, M&H did not receive any other payments from the Debtor other than those described herein.

6

16. As M&H agreed to "cap" its fee for the preparation of the Debtor's bankruptcy filings at $30,000, and its outstanding invoices as of the petition date were $37,251.10, an amount greater than $30,000, the entire Bankruptcy Retainer was fully exhausted and M&H as of the day of this Declaration, holds no retainer from the Debtor. Moreover, as M&H agreed to waive any claim against the Debtor with respects to amounts due that exceeded the $30,000 Bankruptcy Retainer, the Debtor did not owe any amounts to M&H as of the Petition Date, and therefore M&H is not a pre-petition creditor of the Debtor.

17. Pursuant to Bankruptcy Rule 2016(b), M&H has not said nor agreed to share any compensation it has received or may receive with another party or person, other than with the Members of M&H and the contract professionals, such as junior attorneys and paralegals which M&H hires from time to time.

18. For professional services rendered during these cases, M&H's fees are based in part on its guideline hourly rates, which are periodically adjusted. Based upon the Bankruptcy Engagement Agreement, M&H currently bills the Debtor at the following hourly rates: $600 per hour for partners; $350 for other attorneys and $100 for paralegals. Together with my Partner, Sandra E. Mayerson, I am the restructuring attorney leading the M&H engagement in this Chapter 11 case and both Sandra Mayerson and my present hourly rate is $600.

19. Although M&H only has two full-time attorneys, in accordance with the Engagement Agreement, M&H will assign work to other contract lawyers and contract paralegals when appropriate to provide the necessary service to the Debtor in the most efficient and cost-effective manner.

20. Consistent with M&H's policy with respect to other clients, M&H will continue to charge the Debtor for all other services provided and for other charges and disbursements

7

incurred in the rendition of services. These charges and disbursements include (without limitation) cost of photocopying at ten cents per page , electronic data management services, including scanning and document imaging, travel, travel related expenses, business meals, computerized research, messages, inquiries, postage, witness fees, and other fees related to trials and hearings.

21. During the course of this Chapter 11 Case, M&H will apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in these cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred. Such application will constitute a request for interim payment against M&H's reasonable fees and expenses to be determined at the conclusion of this case.

22. M&H will accept as compensation such sums as it may be allowed by the Court on the basis of the professional time spent, the rate charged for such services, the necessity of such services to the administration of the Estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues, or tasks addressed in this case.

23. Additionally, M&H will also seek compensation for all time and expenses associated with its retention as a Section 327(a) professional, including the preparation of the Application, this Declaration, and related documents, as well as any monthly fee statements and all interim and final fee applications.

24. Other than as set forth above, no arrangement is proposed between the Debtor and M&H for compensation to be paid in this case.

25. Except for such sharing arrangements among M&H, M&H has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted pursuant to Bankruptcy Code Section 504(b)(1).

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information, and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated: November 28, 2017

**MAYERSON & HARTHEIMER PLLC**

*/s/ David H. Hartheimer*
David H. Hartheimer
Sandra E. Mayerson
845 Third Avenue, 11th Floor
New York, New York 10022
(646) 778-4380
david@mhlaw-ny.com
sandra@mhlaw-ny.com